## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MELVYN KLEIN, Individually and On Behalf of All Others Similarly Situated, | **Case No.:**   9:18cv80307 |
| Plaintiff, | |
| vs. | **JURY DEMANDED** |
| MAGICJACK VOCALTEC LTD., IZHAK GROSS, TALI YARON-ELDAR, DON CARLOS BELL III, ALAN B. HOWE, DR. YUEN WAH SING, and RICHARD HARRIS, | |
| Defendants. | |

Plaintiff Melvyn Klein ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      Plaintiff brings this action, individually, as a public stockholder of magicJack VocalTec Ltd. ("magicJack" or the "Company") against the members of magicJack's Board of Directors (the "Board") due to magicJack's violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9"), and on behalf of himself and a putative class of public shareholders of magicJack against the Individual Defendants (defined below) for breach of fiduciary duty.

2.      On November 9, 2017, magicJack and B. Riley Financial, Inc. ("B. Riley") announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement"), by and among the Company, B. Riley, and B. R. Acquisition Ltd., an Israeli corporation and wholly owned subsidiary of B. Riley ("Merger Sub").

3.      The terms of the Merger Agreement state that B. Riley will acquire magicJack through the merger of Merger Sub into magicJack.  magicJack will survive as a wholly owned subsidiary of B. Riley Principal Investments, LLC, a wholly owned subsidiary of B. Riley (the "Proposed Transaction").  The Merger Agreement also states that magicJack stockholders will receive $8.71 per share in cash in exchange for each share of magicJack common stock that they own (the "Merger Consideration").  As discussed herein, the Merger Consideration is inadequate.

4.      Further, on February 8, 2018, a materially false and misleading Definitive Proxy Statement on a Schedule 14A (the "Proxy Statement") was filed with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act.  The Proxy Statement contains materially false and misleading statements regarding: (a) the Company's financial projections and (b) the financial analyses performed by BofA Merrill Lynch.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.

## THE PARTIES

8.      ***Plaintiff Melvyn Klein*** is, and has been at all times relevant hereto, a stockholder of magicJack. *See* attached certification.

9.      Defendant magicJack has its principle offices located at 560 Village Blvd, Suite 120, West Palm Beach, Florida 33409.

10.     ***Defendant Izhak Gross*** ("Gross") is a director of the Company.  He also currently serves as Chairman of the Board.

11.     ***Defendant Tali Yaron-Eldar*** ("Yaron-Eldar") is a director of the Company.

12.     ***Defendant Don Carlos Bell III*** ("Bell") is a director of the Company. He also currently serves as President and Chief Executive Officer ("CEO") of the Company.

13.     ***Defendant Alan B. Howe*** ("Howe") is a director of the Company.

14.     ***Defendant Dr. Yuen Wah Sing*** ("Sing") is a director of the Company.

15.     ***Defendant Richard Harris*** ("Harris") is a director of the Company.

16.     The defendants listed paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants".

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings his claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own magicJack common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

18.     Plaintiff's claim is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

19.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of February 7, 2018, there were approximately 16,189,794 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by magicJack or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

20.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, among inter alia:

(a)     Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct;

(b)     Whether Defendants have disclosed and will disclose all material facts about the Proposed Transaction to shareholders;

(c)     Have the Individual Defendants breached their fiduciary duties of loyalty and/or care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction; and

(d)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the Proposed Transaction complained of herein consummated.

21.     Plaintiff will fairly and adequately protect the interests of the Class and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

22.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

23.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

24.      On November 19, 2017, a joint press release was issued by the Company and B. Riley that announced the Proposed Transaction.   The joint press release states in relevant part:

> LOS ANGELES, CA, and WEST PALM BEACH, FL and NETANYA, ISRAEL, November 9, 2017 – B. Riley Financial, Inc. ("B. Riley") (NASDAQ: RILY), a diversified financial services company, and magicJack VocalTec, Ltd. ("magicJack")(NASDAQ: CALL), a leading Voice over IP (VOIP) cloud-based communications company, have signed a definitive merger agreement, pursuant to which B. Riley will acquire magicJack for $8.71 per share, representing a 23% premium over magicJack's 90-day average stock price and approximately $143 million in aggregate merger consideration. It is anticipated that magicJack will be held by B. Riley's subsidiary B. Riley Principal Investments, LLC, the entity that currently owns United Online, Inc., a complementary telecommunications company. B. Riley expects to finance the transaction using cash on hand and debt financing.
>
> "With magicJack, we look to replicate the success we've had with our United Online acquisition by again leveraging our operational expertise to generate significant cash flows. The synergistic potential, combined with magicJack's subscriber base and brand name, make this an attractive investment opportunity," said Kenny Young, CEO of B. Riley Principal Investments and a veteran telecom executive.
>
> Bryant Riley, Chairman and CEO of B. Riley said, "Investments such as this one are the key reason we formed our Principal Investments group.  We believe that magicJack is representative of the type of proprietary investment with attractive return characteristics that are often overlooked by others, but where we are uniquely qualified to leverage our balance sheet and comprehensive

platform in order to maximize the investment potential. Once fully integrated, we expect magicJack to generate a meaningful contribution to B. Riley's cash flow and, consistent with our policy of returning capital to shareholders, lead to increased dividends for our shareholders in the future."

"This merger reflects the successful completion of our strategic alternatives process which we believe maximizes shareholder value and will benefit all our loyal customers," said Don Bell, CEO of magicJack. "Jointly, we believe that there are significant synergistic opportunities that will result from this transaction that are complementary to magicJack's platform."

**Closing Details**

The closing of the transaction is subject to the receipt of certain regulatory approvals, the approval of the magicJack shareholders and the satisfaction of other closing conditions. The transaction is expected to close in the first half of 2018. B. Riley FBR, Inc. served as financial advisor to B. Riley. Sullivan & Cromwell LLP, Wilkinson Barker Knauer LLP and Gross Kleinhendler, Hodak, Halevy, Greenberg & Co. served as legal counsel to B. Riley. Bryan Cave LLP, Wiley Rein LLP and Yigal Arnon & Co. served as legal counsel and BofA Merrill Lynch acted as financial advisor for magicJack

25.     The Merger Consideration is unfair and inadequate because the intrinsic value of the Company is in excess of the amount offered given the Company's prospects for future growth and earnings.

26.     For example, the Company's second quarter 2017 financial results highlighted that the Company's revenue expectations for the quarter had increased.  Further, the Company also reported GAAP operating income of $1.1 million for the quarter, $4.4 million in Adjusted EBITDA for the quarter, and $3.4 million in non-GAAP net income for the quarter.

27.     On August 9, 2017, the Company filed a Form 8-K with the SEC announcing its Second Quarter 2017 Financial Results.  It was in this filing that the Company highlighted the following:

**Second Quarter 2017 Financial Highlights**:

-- **Net revenues**: Total net revenues for the second quarter of 2017 were $22.4 million. Net revenues from the sales of magicJack devices were $2.5 million and access rights renewal revenues were $13.0 million and accounted for 58% of total net revenues. Prepaid minute revenues were $1.2 million and access and wholesale charges were $1.0 million during the quarter. Broadsmart Global, Inc. contributed $3.0 million in revenues to the second quarter of 2017. Other revenue items contributed the remaining $1.7 million of total net revenues during the second quarter of 2017.

-- **Operating income**: GAAP operating income for the second quarter of 2017 was $1.1 million which included $1.7 million in charges primarily related to non-recurring legal costs and settlements and senior management transition expenses.

-- **Adjusted EBITDA**: Adjusted EBITDA for the second quarter of 2017 was $4.4 million.

-- **Net loss**: GAAP net loss attributable to common shareholders for the second quarter of 2017 was ($1.6) million or ($0.10) GAAP diluted net income per share based on 16.1 million weighted-average diluted ordinary shares outstanding. GAAP net loss included the following items:

- $2.6 million tax-related items, which included a $2.4 million tax impact due to expiration of stock options;
- $0.6 million accrual for a state tax settlements;
- $0.5 million in costs related to the strategic process;
- $0.4 million accrual for costs related to an expected class action suit settlement, which represents the remainder of costs we do not expect to recover from insurance; and
- $0.2 million in severance and executive management transition expenses

-- **Non-GAAP net income**: Non-GAAP net income attributable to common shareholders for the second quarter of 2017 was $3.4 million or $0.21 non-GAAP net income per share based on 16.1 million weighted-average diluted ordinary shares outstanding.

-- **Cash**: As of June 30, 2017, magicJack VocalTec had cash and cash equivalents of $47.0 million and no debt. During the second quarter of 2017, the company used $0.3 million net cash in operating activities, which reflects the impact of $2.4 million spent on severances and senior management transition costs, approximately

7

$1.0 million in payments of expenses associated with the proxy dispute and lower renewal sales.

A reconciliation of GAAP to non-GAAP measures, as well as the calculation of free cash flow has been provided in the tables included below in this press release. An explanation of these measures is also included below under the heading "Non-GAAP Measures.

**Additional Second Quarter 2017 and Recent Highlights**:

-- As of June 30, 2017, magicJack had an estimated 2.04 million active MJ subscribers, which are defined as device users that are under an active subscription contract.

-- magicJack activated approximately 87,000 subscribers during the second quarter of 2017. Activations are defined as devices that become activated on to a subscription contract during a given period.

-- During the quarter ended June 30, 2017, magicJack's average monthly churn was 2.1%.

28.     On November 9, 2017, the Company released its third quarter 2017 financial results.     These 2017 third quarter results indicated that the Company outperformed revenue expectations for the third quarter of 2017.  In addition, the 2017 third quarter results indicated that the Company improved on its second quarter 2017 financial results in several metrics.

29.     On this same day, the Company filed a Form 8-K with the SEC announcing its Third Quarter 2017 Financial Results.  It was in this filing that the Company highlighted the following:

**Third Quarter 2017 Financial Highlights**:

– **Net revenues**: Total net revenues for the third quarter of 2017 were $21.7 million. Net revenues from the sales of magicJack devices were $2.6 million and access rights renewal revenues were $12.8 million and accounted for 59% of total net revenues. Prepaid minute revenues were $1.1 million and access and wholesale charges were $0.9 million during the quarter. Broadsmart Global, Inc. contributed $2.6 million in revenues to the third quarter of 2017.

Other revenue items contributed the remaining $1.6 million of total net revenues during the third of 2017.

– **Operating income**: GAAP operating income for the third quarter of 2017 was $4.0 million which included $1.3 million in net charges primarily related to non-recurring legal costs, a gain on mark-to-market and senior management transition expenses.

– **Non-GAAP Adjusted EBITDA**: Adjusted EBITDA for the third quarter of 2017 was $5.9 million.

– **Net Income**: GAAP net income attributable to common shareholders for the third quarter of 2017 was $2.5 million or $0.15. Non-GAAP diluted net income per share based on 16.1 million weighted-average diluted ordinary shares outstanding. GAAP net income included the following items:

- $1.6 million tax-related items, which included a $0.5 million tax impact due to expiration of stock options;
- $1.1 million in costs related to the strategic process;
- $0.3 million in severance and executive management transition expenses; and
- $0.9 million gain on mark-to-market.

– **Non-GAAP net income**: Non-GAAP net income attributable to common shareholders for the third quarter of 2017 was $4.2 million or $0.26. Non-GAAP net income per share based on 16.1 million weighted-average diluted ordinary shares outstanding.

– **Cash**: As of September 30, 2017, magicJack VocalTec had cash and cash equivalents of $51.3 million and no debt. During the third quarter of 2017, the company generated $4.5 million net cash in operating activities, which reflects the impact of $2.0 million received from escrow related to the acquisition of Broadsmart Global, Inc., $1.0 million received as a result of a dispute settlement. It also includes payments for approximately $0.7 million payout for an executive sign-on bonus and compensation accrued in prior quarters, $0.3 million in severances and senior management transition costs, a $0.3 million payment related to a legal settlement accrued in a prior quarter, as well as payments of expenses associated with the strategic process.

A reconciliation of GAAP to non-GAAP measures, as well as the calculation of free cash flow has been provided in the tables included

below in this press release. An explanation of these measures is also included below under the heading "Non-GAAP Measures."

**Additional Third Quarter 2017 and Recent Highlights**:

– As of September 30, 2017, magicJack had an estimated 2.00 million active MJ subscribers, which are defined as device users that are under an active subscription contract.

– magicJack activated approximately 85,000 subscribers during the third quarter of 2017. Activations are defined as devices that become activated on to a subscription contract during a given period.

– During the quarter ended September 30, 2017, magicJack's average monthly churn was 2.0%.

## The False and Misleading Proxy Statement

30.    On February 8, 2018, the Company filed the Proxy Statement with the SEC.  The Proxy Statement solicits stockholders to vote in favor of the Proposed Transaction.

31.    The Proxy Statement is materially false and misleading for the following reasons:

(a)    The Proxy Statement fails to disclose the estimated unlevered free cash flow projections expected to result from the Company's Spark[1] initiative for the years 2018 through 2022;

(b)    The Proxy Statement fails to disclose the Company's Tax Cuts and Jobs Act ("TCJA") effected forecasts, including the Company's TCJA-effected unlevered free cash flows;

(c)    The Proxy Statement contains BofA Merrill Lynch's *Discounted Cash Flow Analysis*.  BofA Merrill Lynch *Discounted Cash Flow Analysis* fails to disclose key components used in their analysis: (i) the Company's terminal value at the end of 2022;

---

[1]    In July 2017, the Company launched magicJack Spark on iOS devices.  The mobile apps allow customers to place and receive telephone calls in the United States or Canada on their mobile devices through either an existing new magicJack account.

(ii) the inputs and assumptions underlying the calculation of the perpetuity growth rates ranging from (3.0)% to 0.0% used for the Company; and (iii) the inputs and assumptions underlying the calculation of the discount rate range of 18.0% to 22.0% used for the Company;

(d)       The BofA Merrill Lynch's *Discounted Cash Flow Analysis* fails to consider the expected benefits of the Company's Spark initiative.  For example, the BofA Merrill Lynch's *Discounted Cash Flow Analysis* fails to disclose the following components used in the analysis: (i) the unlevered, after-tax free cash flows forecasted for the Company's Spark initiative for the fiscal years 2018 through 2022; (ii) the terminal value for the Company's Spark initiative at the end of 2022; (iii) the inputs and assumptions underlying the calculation of the perpetuity growth rates ranging from 2.0% to 5.0% used for the Company's Spark initiative; and (iv) the inputs and assumptions underlying the calculation of the discount rate range of 18.0% to 22.0% used for the Company's Spark initiative;

(e)       The BofA Merrill Lynch's *Discounted Cash Flow Analysis* fails to consider the TCJA 21% federal corporate tax rate.  For example, the BofA Merrill Lynch's *Discounted Cash Flow Analysis* fails to disclose the following components used in the analysis: (i) the Company's TCJA-effected unlevered, after-tax free cash flows forecasted for the fiscal years 2018 through 2022; (ii) the Company's TCJA-effected terminal value at the end of 2022; (iii) the inputs and assumptions underlying the calculation of the perpetuity growth rates ranging from (3.0)% to 0.0%; (iv) the inputs and assumptions underlying the calculation of the discount rate range of 19.0% to 23.0%; and (v) the inputs and assumptions underlying the selection of the 10% probably of success weighting to the Company's Spark initiative.

## CLAIMS FOR RELIEF

### COUNT I

### Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

34.     Defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

35.     Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants.  The Proxy Statement misrepresented and/or omitted material facts as described above.  Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

36.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote

on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate

disclosure as significantly altering the "total mix" of information made available in the Proxy

Statement and in other information reasonably available to unitholders.

37.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and SEC Rule 14a-9(a) promulgated thereunder.

38.     Because of the false and misleading statements in the Registration Statement,

Plaintiff and the putative Class are threatened with irreparable harm, rendering money damages

inadequate.   Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is

corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

39.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of the Company within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers  or  directors  of  the  Company  and  participation  in  or  awareness  of  the  Company's

operations or intimate knowledge of the false statements contained in the Proxy Statement filed

with the SEC, they had the power to influence and control and did influence and control, directly

or indirectly, the decision-making of the Company, including the content and dissemination of the

various statements which Plaintiff contends are false and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     Plaintiff and the putative Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the putative Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)     Declaring that the Proxy Statement is materially false or misleading;

(C)     Enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     In the event that the Proposed Transaction are consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the putative Class rescissory damages;

(E)     Directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)     Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 9, 2018

**SCOTT EGLESTON, P.A.**

By: */s/ Scott Egleston*_____
    Scott Egleston
152 N.E. 167th Street, Suite 300
Miami, FL 33162
Telephone: (305) 892-800
Facsimile: (305) 675-3730
Email: scott@eglestonlegal.com

***GAINEY McKENNA & EGLESTON***
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY  10016
Telephone: 212-983-1300
Facsimile: 212-983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

***Attorneys for Plaintiff Melvyn Klein***

## CERTIFICATION OF NAMED PLAINTIFF

I, <u>Melvyn Klein</u> ("Plaintiff") hereby retain the Gainey McKenna & Egleston and such co-counsel it deems appropriate to associate with, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in *magicJack VocalTec Ltd.* securities that are the subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 3,000 | CALL | BUY | 03/16/2016 | $7.30 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Please list other transactions on a separate sheet of paper, if necessary.**

Plaintiff has sought to serve as a class representative in the following cases within the last three years: NONE.

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of March 2018

*/s/ Melvyn Klein*
Signature